IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THE COLUMBIA BANK | : |
| | : |
| v. | : Civil Action WMN-00-1002 |
| | : |
| NETWORK 1 FINANCIAL CORP., et al. | : |

**MEMORANDUM**

Before the Court are: Joint Motion of Nonbank Defendants for Expedited Hearing and Immediate Recrediting of Interpleaded Funds (Paper No. 8);[1] The Columbia Bank's Motion for Partial Summary Judgment and to Withdraw a Portion of Interpleaded Funds (Paper No. 17); The Columbia Bank's Motion to Dismiss the Counterclaim of Powercard International, Inc. or in the Alternative, for Summary Judgment (Paper No. 26); The Columbia Bank's Motion to Dismiss Counts 2 and 3 of the Counterclaim of Network 1 Financial Corporation or in the Alternative, for Summary Judgment (Paper No. 27);[2] The Columbia Bank's Motion to Dismiss Counts Two and Three of the Counterclaim of Merchant Commerce, Inc. or in the Alternative, for Summary Judgment (Paper No. 33); Citizens Bank's Motion to Dismiss Cross-Claim of Central Bank and Trust (Paper No. 41); Motion of the Nonbank Defendants Under Rule 56(f) of the Federal Rules of Civil Procedure for Refusal or Continuance of

---

[1] The portion of this Motion pertaining to request for expedited hearing was denied by the Court on May 1, 2000.

[2] Count 2 of Counterclaim was withdrawn by Network 1 Financial on June 30, 2000.

1

Motions for Summary Judgment of Plaintiff The Columbia Bank (Paper No. 65); Motion of Powercard International, Inc. Under Rule 56(e) of the Federal Rules of Civil Procedure to Strike Second Affidavit of John A. Scaldara, Jr. Filed in Support of Motion for Summary Judgment of Plaintiff The Columbia Bank (Paper No. 67); and Joint Motion for Stay of Discovery Until January 19, 2001 (Paper No. 78). The motions are fully briefed and ripe for decision. Upon a review of the motions and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the Motion of Nonbank Defendants Under Rule 56(f), and the Joint Motion for Stay of Discovery will be granted. All other motions will be denied.

I. **BACKGROUND**

Plaintiff, The Columbia Bank ("Columbia"), is a state chartered bank located in Columbia, Maryland. In early 1998, representatives of Columbia met with William Wade ("Wade"), the President of Network 1 Financial Corporation ("Network 1") and its wholly owned subsidiary, EFTNet Corporation ("EFTNet"), regarding various processing services needed by the EFTNet and Network 1, including Automated Clearing House ("ACH") capabilities. The ACH capabilities sought by Network 1 and EFTNet included a "direct link" with the Federal Reserve Bank whereby EFTNet could originate debit entries, on behalf of

others, from individual consumer accounts with Columbia acting as the originating depository financial institution ("ODFI").

As the initial step in establishing "direct link" capabilities, EFTNet opened three commercial checking accounts with Columbia on February 14, 2000.[3] Starting in early March, 2000, EFTNet and Columbia began to conduct testing of the direct link. After several successful test file transmissions, EFTNet, on March 23, 2000, originated an actual file transmission consisting of 17,010 debit entries totaling $6,707,851.25. This file was to settle on March 24, 2000. Columbia claims it was not notified of the transmission prior to its initiation. The parties dispute whether or not the transmission of an actual file had been authorized by Columbia as well as what representations EFTNet Vice-President, John Morabito ("Morabito"), made to Columbia regarding the nature of the transactions involved.[4] It is uncontested, however, that the parties had not reached a

---

[3] Network 1 had previously established a commercial checking account with Columbia on June 5, 1998.

[4] Columbia contends Morabito stated the files consisted of Fannie Mae, Freddie Mac and Sallie Mae fee billings. Complaint at ¶ 44. It was not until later that Columbia learned the transmission was actually to debit the accounts of individual consumers who had purchased "internet shopping malls" from Defendant Powercard International, Inc. ("Powercard").

formal agreement for the ACH services.[5]

Columbia contends that it immediately tried to stop the transmission with the Federal Reserve Bank but was unable to do. Columbia also alleges that on March 24, 2000, EFTNet President Wade contacted Columbia and stated that the file was a "mistake." Based upon this phone call, the fact that the transmission had not been authorized, and the size of the transmission, Columbia decided to freeze the funds.

Between March 24, 2000, and April 6, 2000, 1,710 of the debit entries were returned.[6] These returns totaled $674,714.40. It is at this point that Columbia filed, on April 7, 2000, its Complaint for Interpleader and deposited the amount of

---

[5] The formal agreement is crucial to Columbia in that the operating rules of the National Clearing House Association ("NACHA") require the ODFI to make certain warranties to the receiving institution regarding the propriety of any transmission. Under these warranties, the ODFI may be held liable, by any receiving institution, for any loss sustained by a receiving institution as a result of the breach of the ODFI warranty. Included in "any loss" are claims for attorneys' fees and costs, resulting directly or indirectly from the breach. See NACHA Operating Rule § 2.7.4.

[6] Under NACHA Operating Rules, the receiving institution can "return" any debit entry for up to 60 days following the original debit if the receiver claims, by affidavit, that the debit entry was unauthorized. The ODFI must accept the return. See NACHA Operating Rules §§ 7.6.1, 7.6.5, 7.7.6. This return period is extended for an additional 30 days under the federal Electric Fund Transfer Act ("EFTA"). See C.F.R. § 205.11(c).

$6,033,136.95[7] in the court registry. In its Complaint, Columbia brings ten counts including: Class Action Interpleader of Funds; Class Action Declaratory Judgment; Petition for Equitable Relief; Breach of Contract (EFTNet and Network 1); Negligence (nonbank Defendants[8]); Negligent Misrepresentation (EFTNet and Network 1); Indemnification and Contribution (nonbank Defendants). In addition, there have been numerous counter and cross-claims filed, as well as the various motions which are the subject of this Memorandum.

## II. DISCUSSION

Nonbank Defendants jointly move for the immediate recrediting of interpleader funds to the checking accounts of the affected consumers. In their reply, this request is amended to one seeking to have the funds dispersed to Defendant Powercard. The basis of the motion is that Columbia has not satisfied the necessary requisites of interpleader and, therefore, the funds should be released. The Court disagrees.

28 U.S.C. § 1335 lists four requirements for interpleader: (1) the interpleader action must be brought by a stakeholder who

---

[7] Representing the original amount of the transmission less the amount of returns honored through April 6, 2000.

[8] The nonbank Defendant's are: EFTNet, Network 1, Powercard, and Merchant Commerce, Inc. ("Merchant Commerce").

has custody or possession of funds that constitute the funds to be distributed; (2) the amount in dispute must be $500 or more; (3) there must be two or more adverse claimants; and (4) the claimants must be of diverse citizenship, as specified in 28 U.S.C. § 1332.  If these elements are satisfied, then interpleader is to be permitted liberally to relieve the parties of the hazards and vexations of conflicting claims.  See Farmers & Mechanics Nat'l Bank v. Walser, 316 Md. 366, 378 (1989).

Here, all elements have been satisfied.  First, Columbia had possession of the funds at issue and had legitimate fears of conflicting claims over the distribution of the funds, as well as Columbia's possible liability as ODFI.  This fear is evidenced from Columbia's claims that there was no contract between Columbia and EFTNet for the ACH services, Columbia's contention that actual transmissions were not authorized, and the disproportionately high number of returns.  Second, the amount in dispute is over six million dollars.  This is well in excess of the required $500 minimum.  Third, there are two or more adverse claimants.  Thus far, claims have been made by several financial institutions, e.g., West Side Auto Employees Federal Credit Union, Central Bank & Trust Company ("Central Bank"), Citizens Bank, and Charter One Bank, FSB, as well as by each of the nonbank Defendants.  Finally, the diversity of citizenship, as

specified in 28 U.S.C. § 1332, is satisfied as Columbia is a Maryland corporation, Powercard is an Alabama corporation, and Network 1 is a Virginia corporation. Taking Columbia's allegations as true, there is sufficient evidence to find that Columbia was justified in both its initial freeze of the funds and in filing its later complaint for interpleader. Additionally, the ownership of the funds continues to be in dispute. Therefore, the Court will deny the nonbank Defendants' motion to release the funds.

The nonbank Defendants have also moved, under Rule 56(f) of the Federal Rules of Civil Procedure, for refusal or continuance of Columbia's various motions for summary judgment.[9] Columbia has not opposed the motion. The nonbank Defendants have provided two affidavits, from Powercard President Steward Giardina and Network 1's President Wade, in support of their motion. Both affidavits state that the nonbank Defendants are not in a position to present facts essential to oppose Columbia's motions because no discovery has, or could have, taken place due to the

---

[9]The motions are actually to dismiss or in the alternative, for summary judgment. Because the parties have submitted material outside the pleadings for the Court's consideration, the Court must treat the motions as motions for summary judgment. See Fed. R. Civ. P. 12(b).

lack of a scheduling order.[10]  According to the affidavits, there are very real issues regarding whether Columbia specifically prohibited EFTNet/Network 1's transmission of the ACH file at issue; whether there was an agreed limitation on EFTNet/Network 1's use of the direct link; and, the reasonableness of Columbia's freezing the funds, as opposed to simply reversing the ACH transactions.  These issues go directly to Columbia's motions for summary judgment as to the nonbank Defendants' counterclaims for tortious interference with contract and/or tortious interference with prospective business advantage.[11]  Additionally, Wade's

---

[10]Scheduling Order was not issued until November 17, 2000, well after these motions were filed.

[11]The motions raise the issue of whether Maryland law or the law of the state where each nonbank Defendant is located would apply.  The Court will clarify this issue to guide further pleadings and proceedings.

A federal court sitting in diversity must apply the conflict of laws principles of the state in which it sits.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).  For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, lex loci delicti commissi, or the law of the place of harm.  Wells v. Liddy, 186 F.3d 505, 521 (4th Cir. 1999).  The place of harm is the place where the injury was suffered, not where the wrongful act took place.  Johnson v. Oroweat Foods Co., 785 F.2d 503, 511 (4th Cir. 1986) (citations omitted).  In this case, the nonbank Defendants were allegedly harmed by the loss of revenue and future business.  This injury occurred in the state in which they are each located.  Therefore, Alabama law applies as to Powercard's tort claims, Virginia law as to Network 1's tort claims, and California law as to the tort claims of Merchant Commerce.

affidavit takes issue with portions of Robert Dael's affidavit regarding whether EFTNet was an authorized "sending point" and whether, prior to the transmissions at issue, only test files had been transmitted. Again, these issues go to the heart of the Columbia's motions.

Rule 56(f) provides that "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment ... or may make such other order as is just." Nonbank Defendants have established that they are not in a position to present facts essential to oppose Columbia's motions due to the lack of discovery. Therefore, the Court will deny Columbia's motions for Partial Summary Judgement and to Withdraw a Portion of Interpleader Funds,[12] to Dismiss the Counterclaim of Powercard or in the Alternative, for Summary Judgment; to Dismiss Counts 2 and 3 of the Counterclaim of Network 1 or in the Alternative, for Summary Judgment; and, to Dismiss Counts Two and Three of the Counterclaim of Merchant

---

[12]Columbia's request to withdraw a portion of interpleaded funds for returns honored from April 7, 2000, through April 30, 2000, must be denied on the additional ground that Defendants have raised an issue as to the adequacy of the interpleaded funds to cover all claims in light of the fact that claims may include various other, direct or indirect, losses.

Commerce or in the Alternative, for Summary Judgment. Columbia is, however, granted leave to refile appropriate motions at the close of discovery.[13]

Defendant Citizens Bank has also moved to dismiss the cross-claim of Central Bank on the grounds that the cross-claim does not meet the basic pleading requirements contained in Fed. R. Civ. P. 8 and that it does not state a claim upon which relief can be granted as required by Fed. R. Civ. P. 12(b)(6). Central Bank argues that the cross-claim is sufficient to meet the requirements of the Federal Rules of Civil Procedure and that it is intended to "give notice to Citizens Bank that Central Bank has claims against the interpleaded funds." Central Bank Response at ¶ 7. While the Court questions if the cross-claim is necessary,[14] the Court agrees with Central Bank that the pleading is sufficient to put Citizens Bank on notice as to its claim. Therefore, Citizens Bank's motion will be denied.

Lastly, the parties have filed a joint motion for stay of discovery until January 19, 2001. The parties assert that a stay

---

[13]Denial of these motions renders Motion of Powercard Under Rule 56(e) of the Federal Rules of Civil Procedure to Strike Second Affidavit of John A. Scaldara, Jr. Filed in Support of Motion for Summary Judgment of Plaintiff The Columbia Bank moot.

[14]The mere fact that Central Bank is a defendant in an interpleader action indicates that it has a claim against the interpleaded funds.

is prudent in light of the pending motions and the imminent filing of a motion for class certification. The Court agrees and will grant the stay. A separate scheduling order will be issued.

### III. CONCLUSION

For the foregoing reasons, the Motion of Nonbank Defendants Under Rule 56(f) and the Joint Motion for Stay of Discovery will be granted. All other motions will be denied. A separate order will issue.

> /s/ William M. Nickerson
> William M. Nickerson
> United States District Judge

Dated: December 14, 2000